UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAN FRANCISCO BAYKEEPER, et al.,<br><br>  Plaintiffs,<br><br>  v.<br><br>UNITED STATES FISH AND WILDLIFE SERVICE, et al.,<br><br>  Defendants. | Case No. 25-cv-01360-LJC<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Re: Dkt. Nos. 23, 26 |

**I.   INTRODUCTION**

This case concerns a petition to list the San Francisco Estuary (ESA) local population of white sturgeon, a large migratory fish that lives in rivers and estuaries, as threatened under the Endangered Species Act (ESA). The parties filed cross-motions for summary judgment, which they subsequently stipulated to treat "as a trial on the papers, such that the case will be resolved on these motions even if the Court finds that a resolution would require weighing evidence in a manner that would not allow for summary judgment." ECF Nos. 29, 30. In light of that stipulation, this Order is structured as findings of fact and conclusions of law pursuant to Rule 52(a)(1) of the Federal Rules of Civil Procedure.[1]

Defendants (the U.S. Fish and Wildlife Service (FWS), FWS Regional Director Paul Souza,[2] and Secretary of the Interior Doug Burgum) concede that they have missed the deadline to

---

[1] To the extent that any matter included in the "Findings of Fact" section is better characterized as a conclusion of law, it shall be deemed a conclusion of law. To the extent that any matter included in the "Conclusions of Law" section is better characterized as a finding of fact, it shall be deemed a finding of fact. *See Tri-Tron Int'l v. Velto*, 525 F.2d 432, 435 (9th Cir. 1975) ("We look at a finding or a conclusion in its true light, regardless of the label that the district court may have placed on it.").
[2] Souza is a defendant by virtue of "exercising the delegated authority of the Director of FWS." *See* ECF No. 25 at 3, ¶ 5.

issue a "twelve-month finding" on the petition and that Plaintiffs are entitled to injunctive relief. The parties dispute only the date by which Defendants should be ordered to issue their decision. Plaintiffs originally sought an order requiring compliance within thirty days of the Court's decision, and modified that request in their Reply to seeking a deadline somewhere in the range of thirty days to six months. Defendants propose a compliance deadline in 2029, to account for a backlog of other pending matters and for staffing shortages, including due to a current hiring freeze and actual and intended reductions in force.

Then Court held a hearing on July 15, 2025. For the reasons discussed below, the Court finds in favor on Plaintiffs on the undisputed merits of their ESA claim, and ORDERS Defendants to submit a twelve-month finding to the Federal Register no later than nine months from the date of this Order.

The Clerk shall enter judgment consistent with this Order in favor of Plaintiffs and close the case.[3]

## II.     FINDINGS OF FACT

Plaintiffs have offered evidence regarding the lifecycle and recent decline of the white sturgeon in the San Francisco Estuary (SFE). The material presented is interesting, and at a high level provides contexts and speaks to FWS's responsibilities to advance the conservation and management of wildlife and their habitats, but the details are not particularly relevant to the outcome of the pending motions, given the limited issues in dispute.

The most relevant facts are straightforward. At least according to Plaintiffs, the local population of white sturgeon has been declining significantly over recent decades, and there were likely sharp decreases in the population due to algal blooms in 2021 and 2022. Plaintiffs filed a petition to list the SFE population of white sturgeon as threatened under the ESA. ECF No. 23-3. The petition includes a request to "designate critical habitat for the SFE White Sturgeon concurrently with listing." *Id.* at 40.

Defendants received the petition on December 6, 2023. ECF No. 23-2 at 6. On October 8,

---

[3] The parties consented to the jurisdiction of a magistrate judge for all purposes under 28 U.S.C. § 636(c).

2024, Defendants determined that this petition, and other unrelated petitions for other species not at issue here, "present substantial scientific or commercial information indicating that the petitioned actions may be warranted," and published notification in the Federal Register that it was "initiating status reviews of these species to determine whether the petitioned actions are warranted." *Id.* at 2.[4] Although Defendants acknowledge that the "substantial information" finding required them to make a "twelve-month" finding by December 6, 2024 (one year after receiving the petition), they failed to do so. *See* ECF No. 26 at 21; 16 U.S.C. § 1533(b)(3)(B).

Defendants cite a comprehensive schedule that FWS prepared in May of 2024 with targeted deadlines for other petitions and agency priorities,[5] and note that some deadlines have been set by court order or by a recent settlement agreement with the Center for Biological Diversity governing a large number of ESA petitions. *See* ECF No. 26-2, ¶¶ 17, 19, 24–25 & Ex. A. A declaration by Donald Ratcliff, a field supervisor, includes a list of petitions currently pending before local FWS regional office. ECF No. 26-1, ¶ 21. Defendants' representations regarding the existence of other pending matters are uncontroverted, and the Court accepts them as at least substantially true, recognizing that some changes may have occurred since those lists were prepared.

According to a declaration by Gina Schultz, Acting Assistant Director of Ecology Services for FWS, setting an expedited deadline for this case would disrupt the Fish and Wildlife Service's ability to resolve other petitions on schedule. ECF No. 26-2, ¶ 26. The Court finds that statement less than fully credible. As discussed further below, Defendants' failure to meet statutory deadlines under the ESA appears to have resulted, in part, from adopting procedures that are inconsistent with those deadlines. Accordingly, any inability to meet other deadlines in light of this Court's Order is at least in part a problem of Defendants' own making. The Court accepts that

---

[4] The ESA provides that this finding should have been made, "to the maximum extent practicable, within 90 days after" the Government received the petition. 16 U.S.C. § 1533(b)(3)(A). Plaintiffs do not seek any relief for the Government's failure to make a finding of substantial information until around ten months after they submitted the petition, and this subpart of the statute (unlike subpart (b)(3)(B) at issue here) appears to include enough flexibility that the delay was not necessarily a violation if it occurred as soon as was "practicable." 15 U.S.C. § 1533(b)(3)(A).
[5] https://www.fws.gov/sites/default/files/documents/2024-05/national-domestic-listing-workplan-2024.pdf [https://perma.cc/RK76-JT6D].

3

1  this Order may alter Defendants' ability to resolve other petitions using the schedule and
2  procedures that Defendants had previously intended.  The record is insufficient to make a
3  conclusive finding as to whether Defendants can meet their previously intended deadlines for
4  other petitions while complying with this Order if Defendants set aside, for those other matters,
5  procedures that are inconsistent with the ESA's statutory deadlines.  Defendants have not shown
6  that it is infeasible to do so.

7  Defendants have developed a system in which petitions are placed in one of five "bins" to
8  prioritize which are reviewed first.  ECF No. 26-2, ¶ 14.  The petition at issue here has been
9  assigned to "Bin 3," a designation for species where "important emerging science is under way
10 that would inform key uncertainties," *id.*, because FWS has not determined in its preliminary
11 ninety-day finding that the local white sturgeon population is critically imperiled and because
12 FWS does not "have strong data already available on the status of the entity," ECF No. 26-1, ¶ 6.[6]
13 At least as a general rule, Defendants would therefore afford this petition lower priority for FWS
14 to even begin working on it than other petitions that FWS assigned to Bins 1 and 2.  ECF No.
15 26-2, ¶ 14.  The Court accepts as true Defendants' characterization of the "bin" process and that
16 this petition was assigned to Bin 3.  That finding of fact should not, however, be confused with a
17 conclusion that the bin process is consistent with the ESA.

18 Once this petition emerges from its bin for active review, Defendant's standard process
19 would play out over the following timeline:

- At least nine months to complete a draft Species Status Assessment (SSA).  According to Field Supervisor Ratcliff, "[s]pecies with complex life histories or large datasets, like SFE White Sturgeon, often require additional time to complete a draft SSA."  ECF No. 26-1, ¶ 23.
- One month for peer and technical review of the SSA.  (Running total: at least ten months, or potentially more.)

---

[6] In apparent tension with the purported lack of "strong data already available," ECF No. 26-1, ¶ 6, Ratcliff states later in the same declaration that the "extensive data available" for the SFE white sturgeon population is a factor that will require additional time for review when FWS eventually convenes a team to consider the petition, *id.* ¶ 8 (also citing "complex science").

4

- Two months to incorporate the results of that review and prepare for a recommendation team meeting. (Running total: at least twelve months, or potentially more.) Defendants' submissions are unclear as to whether the meeting itself requires additional time.
- Two months to brief headquarters and incorporate comments from the meeting. (Running total: at least fourteen months, or potentially more.) At this point, Defendants have already exceeded the statutory twelve-month deadline even if they began work immediately after receiving the petition, even under a best-case scenario for how long the SSA would take.
- One month to one year to draft a Federal Register notice, depending on the nature of the finding. (Running total: at least fifteen to twenty-six months, or potentially more.)
- "One month to draft outreach documents, edit the draft Federal Register document, and get informal Solicitor review (legal review)." (Running total: at least sixteen to twenty-seven months, or potentially more.)
- One month to incorporate the results of legal review and for regional leadership to review the draft notice. (Running total: at least seventeen to twenty-eight months, or potentially more.)
- One month for formal legal approval and review by other entities, as well as transmission of the draft to headquarters. (Running total: at least eighteen to twenty-nine months, or potentially more.)
- Three months for review at headquarters. (Running total: at least twenty-one to thirty-two months, or potentially more.)
- Three months or more for review by the Office of Management and Budget (OMB) if proposing a critical habitat as part of a finding that listing is warranted. (Running total if and only if critical habitat is designated: at least twenty-four to thirty-five months, or potentially more, with the additional delay potentially occurring at the first SSA stage, the final OMB stage, or both.)

5

*See* ECF No. 26 at 16–17 (citing ECF No. 26-1, ¶ 23; ECF No. 26-2, ¶¶ 27–30).

The Court accepts that timeline as a factually accurate statement of how long Defendants' standard process would take. That finding of fact should not be confused with a conclusion that the process is consistent with the ESA.

Plaintiffs assert that a "careful read" of Ratcliff's declaration indicates that a warranted-but-precluded finding (discussed further below in the Conclusions of Law) would only take around fifteen months, which should then be reduced to twelve months to set aside impermissible delay due to other agency priorities, which should then be reduced to six months to account for Defendants' delay thus far, as well as arguments that Defendants have developed in this case that could be repurposed to support a conclusion that full listing determination is currently precluded by other priorities. ECF No. 27 at 19. The Court does not agree with Plaintiffs' characterization of Ratcliff's declaration as indicating that the process stated therein could be completed in fifteen, twelve, or six months. This finding of fact should not be confused with a conclusion that the process stated in Ratcliff's declaration is consistent with the ESA.

Ratcliff states in his declaration that Defendants are subject to a hiring freeze imposed by a Presidential Memorandum, "with limited opportunities for the agency to backfill vacancies." ECF No. 26-1, ¶ 22. The Court accepts that declaration that the hiring freeze is in place and that it was imposed by the President, who is not a party to this case. Ratcliff does not, however, articulate any specific effects of that hiring freeze on Defendants' ability to resolve Plaintiffs' petition. Ratcliff also references "significant staffing reductions" and the possibility of "more reductions in the coming months," but does not explain the source of such reductions, *id.* ¶ 22, a question that defense counsel was also unable to answer at the hearing. In the absence of evidence to the contrary, the Court presumes that any reduction in force is within the control of the Defendants named in this case, who include the Secretary of the Interior, and who are obligated by law to comply with the ESA's statutory deadlines.

Plaintiffs offered no evidence that the work remaining to be done to prepare a twelve-month finding on their petition for the SFE white sturgeon population can feasibly be completed in less than nine months. Defendants offered no evidence that, but for their self-imposed procedures,

6

1  priorities, and resource allocations, the work remaining to be done cannot feasibly be completed in
2  nine months. Defendants have not, for example, offered evidence that their funding has been
3  frozen altogether, or that Congress has otherwise blocked them from performing their duties to
4  consider Plaintiffs' petition.  The Court finds as a matter of fact that it is not infeasible for
5  Defendants to complete that work in nine months.
6      Acting Assistant Director Schultz states in her declaration that Defendants do not control
7  when a finding submitted to the Federal Register will actually be published.  ECF No. 26-2, ¶ 31.
8  The Court accepts that assertion as true.

## III. CONCLUSIONS OF LAW

### A. ESA Petition Process

The Administrative Procedures Act[7] provides that all federal agencies must "give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e).  The ESA sets a process for considering petitions to make rules designating species as threatened or endangered.  16 U.S.C. § 1533(b)(3).  The Secretary must consider those petitions "solely on the basis of the best scientific and commercial data available to him after conducting a review of the status of the species and after taking into account" conservation efforts by other government entities.  16 U.S.C. § 1533(b)(1)(A).

"To the maximum extent practicable, within 90 days after receiving the petition . . . the Secretary shall make a finding as to whether the petition presents substantial scientific or commercial information indicating that the petitioned action may be warranted."  16 U.S.C. § 1533(b)(3)(A).  If so, the Secretary must "promptly commence a review of the status of the species concerned."  *Id.*  That "90 day" finding occurred here in October 2024, around ten months after Defendants received Plaintiffs' petition.

The next step in the process is at issue in this case is as follows:

> Within 12 months after receiving a petition that is found under subparagraph (A) to present substantial information indicating that

---

[7] The parties stipulated to dismiss a claim that Plaintiffs asserted under the Administrative Procedures Act.  ECF Nos. 29, 30.  This Order references the Administrative Procedures Act only as background for the ESA's petition process.

>      the petitioned action may be warranted, the Secretary shall make one of the following findings:
>
>      (i) The petitioned action is not warranted, in which case the Secretary shall promptly publish such finding in the Federal Register.
>
>      (ii) The petitioned action is warranted, in which case the Secretary shall promptly publish in the Federal Register a general notice and the complete text of a proposed regulation to implement such action in accordance with paragraph (5).
>
>      (iii) The petitioned action is warranted, but that—
>
>      (I)     the immediate proposal and timely promulgation of a final regulation implementing the petitioned action in accordance with paragraphs (5) and (6) is precluded by pending proposals to determine whether any species is an endangered species or a threatened species, and
>
>      (II)    expeditious progress is being made to add qualified species to [the threatened and endangered species] lists . . .

16 U.S.C. § 1533(b)(3)(B).

As a final step not (yet) at issue in this case, after publishing a finding that a listing is warranted, the Secretary then has one more year to publish a final regulation to implement the decision. 16 U.S.C. § 1533(b)(6)(A); *see generally Or. Nat. Res. Council, Inc. v. Kantor*, 99 F.3d 334 (9th Cir. 1996).

"As the legislative history of the ESA and its subsequent amendments demonstrate, Congress from the outset recognized that timeliness in the listing process is essential," and in 1982 "Congress amended the ESA's petition process expressly to provide certain mandatory deadlines by which the Secretary must act on a petition," for the stated purpose of "forc[ing] action on listing and delisting proposals" that had "languished for years" in the review process. *Ctr. for Biological Diversity v. Norton*, 254 F.3d 833, at 839–40 (9th Cir. 2001) (citations omitted). "By imposing these deadlines, Congress replaced the Secretary's discretion with mandatory, nondiscretionary duties." *Id.* at 840 (cleaned up). The resulting "language of the ESA regarding the deadlines for action could hardly be more clear." *Or. Nat. Res. Council*, 99 F.3d at 338–39.

Section 1533(b)(3)(B) is no exception, setting a "firm twelve-month deadline for making final determinations" of warranted, not warranted, or warranted-but-precluded after a petition is received. *Biodiversity Legal Found. v. Badgley*, 309 F.3d 1166, 1175 (9th Cir. 2002). The Ninth

8

1  Circuit has held that "both the initial finding and the final determination must be completed within
2  twelve months of the date the petition is received. The Service's failure to complete the listing
3  determinations within the mandated time frame compel[s a] court to grant injunctive relief. The
4  court ha[s] no discretion to consider the Service's stated priorities." *Biodiversity Legal*, 309 F.3d
5  at 1178.

### B. Judicial Review

The ESA provides that any person may bring an action "against the Secretary where there is alleged a failure of the Secretary to perform any act or duty under section 1533 of this title which is not discretionary," and that "district courts shall have jurisdiction . . . to order the Secretary to perform such act or duty." 16 U.S.C. § 1640(g)(1)(C).

"[A]s firmly recognized by the Supreme Court, . . . the ESA strips courts of at least some of their equitable discretion in determining whether injunctive relief is warranted." *Cottonwood Env't L. Ctr. v. U.S. Forest Serv.*, 789 F.3d 1075, 1090 (9th Cir. 2015) (citing *Amoco Prod. Co. v. Vill. of Gambell*, 480 U.S. 531, 543 n.9 (1987)). Courts need not balance competing interests, must defer to Congress's recognition of the public interest in protecting endangered species, and treat monetary damages as inadequate as a matter of law. *Id.* A plaintiff still must show irreparable injury, *id.* at 1091, and to this end Plaintiffs here have offered declarations establishing their (and their members') interests in fishing for or observing the declining local population of white sturgeon. ECF Nos. 23-5, 23-6, 23-7, 23-8, 23-10. Defendants do not dispute that Plaintiffs have established a sufficient risk of irreparable harm to such interests if action is not taken to protect the species.

### C. Defendants Have Disregarded the ESA's Firm Deadlines

Defendants were required by law to reach a decision within one year of when the petition was filed. 16 U.S.C. § 1533(b)(3)(B). As noted above, the "language of the ESA regarding the deadlines for action could hardly be more clear." *Or. Nat. Res. Council*, 99 F.3d at 338–39.

Defendants have apparently adopted procedures that do not allow them to meet that statutory deadline even if they are not delayed in beginning work on a petition. *See* ECF No. 26 at 31 ("Even if the BDFWO and Regional Office had staff that could turn their attention now to the

9

task and convened a core team today to begin the Species Status Assessment, it would take two to three years and the Service could not meet Plaintiffs' deadline."). It is difficult, and likely impossible, to square those procedures with the law. The ESA speaks to Secretary's obligation to "conduct[] a review" in broad terms, so long as the Secretary "make[s] determinations . . . solely on the basis of the best scientific and commercial data available" and considers other governmental conservation efforts. 16 U.S.C. § 1533(b)(1)(A). That edict leaves room for the Secretary to determine how such a review will be conducted. *See, e.g.*, *Nat. Res. Def. Council v. Kempthorne*, 506 F. Supp. 2d 322, 359 (E.D. Cal. 2007) ("An agency has wide discretion to determine what is 'the best scientific and commercial data available.'" (citation omitted)). The one-year deadline, however, leaves no such discretion as to *when* the review must be completed. *See* 16 U.S.C. § 1533(b)(3)(B). Binding precedent has construed the ESA's deadlines as "replac[ing] the Secretary's discretion with mandatory, nondiscretionary duties." *Norton*, 254 F.3d at 840 (cleaned up). It follows that Defendants (including the Secretary of the Interior) must conform the aspects of the review that fall within their discretion, including the particular process that FWS will follow to review the "best available" science and reach a decision, to fit the twelve-month deadline that falls outside of their discretion. They do not appear to have done so.[8]

A statutory provision not addressed in the parties' briefs authorizes the Secretary to establish "a ranking system to assist in the identification of species that should receive priority review." 16 U.S.C. § 1533(h). That statute does not purport to allow the Secretary to violate the deadlines stated in subpart (b) of the same statute, and is instead best understood as addressing how the Secretary prioritizes work *within* those deadlines.

Defendants refer vaguely to limitations resulting from congressional appropriations, *see* ECF No. 26 at 14, Acting Assistant Director Schultz states in her declaration that Congress has appropriated between $18,318,000 and $23,398,000 per year for ESA listing work in recent years, ECF No. 26-2, ¶ 5. If FWS's congressionally appropriated budget is insufficient for FWS to conduct the degree of thorough review that FWS would like to do within the statutory deadline,

---

[8] At the hearing, defense counsel acknowledged that Defendants' procedures for review are not set by statute or regulation.

10

that would seem to reflect an implicit congressional determination that FWS cannot devote that level of resources to each petition, and must instead conduct a less thorough review to meet the mandatory deadline with the resources available. Any review process will involve tradeoffs between thoroughness and speed. While FWS's view that more thorough review is preferable might be a reasonable judgment on a blank slate, Congress has already set a mandatory deadline and appropriated a certain amount of funds to meet that deadline, and the degree of review must be feasible within those parameters. The ESA does not vest discretion in either Defendants or this Court to set aside Congress's judgment as to either the mandatory deadline or the funds available to meet it.

District courts have reached similar conclusions in other ESA cases:

> As other district courts within this Circuit have noted, "[t]o the extent the [FWS] feels aggrieved by Congress' failure to allocate proper resources in which to comply with [its] statutory duty, Congress, not the courts, is the proper governmental body to provide relief." *Conservation Council for Hawai'i v. Babbitt,* 24 F. Supp. 2d 1074, 1078–79 (D. Hawai'i 1998) (quoting *Southwest Center for Biological Diversity v. Babbitt,* No. 96–1874, slip op. at 7 (D. Ariz. Mar. 20, 1997)). Put another way, "[t]he solution of being over-obligated and under-funded rests with Congress, and not with the Court." *Butte Environmental Council v. White,* 145 F. Supp. 2d 1180, 1185 (E.D. Cal. 2001) (quoting *Center for Biological Diversity v. Babbitt,* No. C–99–3202, slip op. at 19 (N.D. Cal. 2000)).

*Ctr. for Biological Diversity v. Norton*, 304 F. Supp. 2d 1174, 1179 (D. Ariz. 2003)[9] (denying a motion for relief from a deadline previously imposed by the court) (alterations in original).

Outside of the context of the ESA, courts have held that they "generally have broad equitable discretion to fix an appropriate deadline" for an agency's compliance with a missed deadline. *E.g.*, *California v. U.S. Env't Prot. Agency*, 385 F. Supp. 3d 903, 908 (N.D. Cal. 2019) (citing *Nat. Res. Def. Council v. Sw. Marine, Inc.*, 236 F.3d 985, 999–1000 (9th Cir. 2000)). Although Congress's "timeframe generally still controls," a "delinquent agency" can meet its

---

[9] Two other decisions by the same name are cited in this Order: a decision by the Ninth Circuit discussed throughout, and a decision by Judge Conti for the Northern District of California addressed below. As sometimes happens with environmental cases involving frequent plaintiffs suing government officials, these are all different cases, involving different petitions and species. Citations herein to the short form "*Norton*" refer to the Ninth Circuit's decision, 254 F.3d 833.

11

1  "especially heavy burden of showing infeasibility" by establishing either that "the budgetary and
2  manpower demands required are beyond the agency's capacity or would unduly jeopardize the
3  implementation of other essential programs," or that the "agency[] need[s] to have more time to
4  sufficiently evaluate complex technical issues." *Id.* at 909 (cleaned up).  It is not clear that such a
5  standard applies to ESA cases, where the Ninth Circuit has repeatedly emphasized Congress's
6  intent to establish strict deadlines.  *Norton*, 254 F.3d at 839–40; *Or. Nat. Res. Council*, 99 F.3d at
7  338–39.  At the very least, though, Defendants must meet an "especially heavy burden" to
8  demonstrate that a schedule consistent with Congress's determination is infeasible.  *See*
9  *California*, 385 F. Supp. 3d at 909.

10  Defendants are correct that the Ninth Circuit cases addressing such deadlines generally
11  arose in the posture of whether an injunction should issue at all, rather than what deadline a district
12  court should set.  But if a district court could or should, with respect to setting a deadline for one
13  of the three enumerated findings under § 1533(b)(3)(B), simply defer to FWS's assessment of
14  petition priorities and an appropriate timeline for review, that deference would effectively
15  reintroduce the very discretion that Congress sought to eliminate by adding deadlines to the
16  statute, and render those deadlines a practical nullity.  Although not addressed by the parties, it
17  would also elide the distinction between the language Congress used in the two statutory
18  provisions that address the timing of FWS's findings—§ 1533(b)(3)(A)'s imposition of a ninety-
19  day deadline "[t]o the maximum extent practicable" for a finding of substantial information, and
20  § 1533(b)(3)(B)'s twelve-month deadline without that qualifying phrase for a final finding.
21  Defendants' position seemingly renders the qualifying language in subpart (A) surplusage.  *See,*
22  *e.g.*, *Bd. of Trs. of Leland Stanford Junior Univ. v. Roche Molecular Sys., Inc.*, 563 U.S. 776, 788
23  (2011) (noting "general reluctance to treat statutory terms as surplusage" (cleaned up)).

24  When asked at the hearing how Defendants' proposed approach—asking the Court
25  simply to defer to their judgment as to schedules and priorities—is consistent with the mandatory
26  deadline and the ESA's amendment to eliminate administrative discretion, defense counsel had no
27  satisfying answer.

28  The only Ninth Circuit case to grant relief from this sort of ESA deadline—there, an

injunction to issue a final rule under § 1533(b)(6)—was issued in the context of a complete funding freeze for such action by Congress, which rendered compliance truly impossible. The Ninth Circuit instructed "the district court to modify its order and judgment to provide that compliance with the requirement that the Secretary make a final determination as to the endangered status of the California red-legged frog is delayed until a reasonable time after appropriated funds are made available, the time to be specified by the district court," without explaining how the district court should determine what would be a reasonable time after funding was restored. *Env't Def. Ctr. v. Babbitt*, 73 F.3d 867, 872 (9th Cir. 1995). This case does not resemble *Babbitt*, because Defendants are not currently barred by Congress from issuing findings on petitions to list species as threatened or endangered. The barrier is instead Defendants' failure to tailor their process and timeline to meet the deadline Congress has mandated for reaching a decision and the funding that Congress has provided to do so.

Even applying *Babbitt*'s standard of reasonableness, district courts have not always deferred to the Government's proposed deadlines. In *Center for Biological Diversity v. Kempthorne*, for example, Judge Wilken cited *Babbitt* for the proposition that the standard for an injunction compliance date is reasonableness, but she ordered the Government to publish a final regulation on an ESA listing (which that was delinquent by a few months) within less than thirty days of her order, which was sooner than the Government had proposed. No. C 08-1339 CW, 2008 WL 1902703, at *3 (N.D. Cal. Apr. 28, 2008).[10]

In contrast, Judge Conti held in *Center for Biological Diversity v. Norton* that *Babbitt* counseled in favor of acquiescing to the Government's preferred deadline for a delinquent twelve-month finding, noting a backlog of petitions and limited appropriations lingering in the wake of the mid-1990s funding freeze. 208 F. Supp. 2d 1044, 1051 (N.D. Cal. 2002). He quoted with

---

[10] A District of Nevada case discussed by both parties similarly rejected FWS's proposed deadline and instead set a thirty-day deadline where the "defendants fail[ed] to persuasively argue that the 30-day deadline is impossible or infeasible," but that case appears to have been based on at least a somewhat different factual posture of the degree of work remaining to be done by FWS, and the court did not meaningfully explain how it determined that the defendants' arguments were unpersuasive. *See Ctr. for Biological Diversity v. Bernhardt*, No. 2:20-cv-1812 JCM (NJK), 2021 WL 1565787, at *9 (D. Nev. Apr. 21, 2021). That case is therefore not particularly helpful to the analysis here.

13

approval Plaintiffs' assertion that only Congress can resolve tensions between statutory deadlines and limited appropriations, but "resigned [him]self to the fact that it is not [the court's] place 'to assess the wisdom of policy choices,'" and therefore "deferr[ed] to the Service's discretion in allocating its limited resources." *Id.* (quoting *Biodiversity Legal Found. v. Babbitt*, 146 F.3d 1249, 1257 (10th Cir. 1998)).[11]  Judge Conti did not address the amendments to the ESA that established those deadlines specifically to limit the executive branch's discretion, nor the Ninth Circuit authority emphasizing the intent of those amendments and district court's obligations to enforce those deadlines.  *See also S.F. Baykeeper v. U.S. Fish & Wildlife Serv.*, No. 23-cv-06601-LB, 2024 WL 1485858, at *5 (N.D. Cal. Apr. 5, 2024) (deferring to FWS's proposed deadline for promulgation of a delinquent final rule, without addressing how that outcome is consistent with Ninth Circuit authority emphasizing the ESA's strict deadlines and Congress's intent in enacting them); *cf. Norton*, 254 F.3d at 839–40; *Or. Nat. Res. Council*, 99 F.3d at 338–39.  Judge Conti's 2002 decision is distinguishable in that 1995's unique total funding freeze addressed in *Babbitt* was closer in memory and still directly affecting FWS's backlog of work.  To the extent that decision might be applicable, this Court respectfully disagrees that Judge Conti's choice of deference to Defendants' lengthy review process—which is apparently unsuited to meet the ESA's one-year deadline for most petitions under current congressional funding levels—is consistent with Judge Conti's recognition that, "[t]o fully resolve the dilemma at issue, it is *Congress* that must undertake the politically contentious task" of setting funding and/or considering amendments to the ESA's deadlines.  *Ctr. for Biological Diversity*, 208 F. Supp. 2d at 1051 (emphasis added).

Congress has made its choice in continuing to fund the ESA listing program at levels incompatible with Defendants' process, while not amending the deadline.  The Court is obligated to respect and enforce that decision to the best of its ability, notwithstanding the agency's preference for a longer process of review.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 412–13 (2024) ("Courts must exercise their independent judgment in deciding whether an agency

---

[11] This Tenth Circuit decision considered the ninety-day deadline under 16 U.S.C. § 1533(b)(3)(A), which—unlike subpart (b)(3)(B) at issue here and in the case before Judge Conti—only requires compliance to the extent "practicable."

14

has acted within its statutory authority . . . .").

### D. The Statute Specifically Contemplates and Accounts for Practical Difficulty Meeting Deadlines

As Plaintiffs note in their Reply, Congress has provided Defendants with an option if Defendants are unable to complete the detailed work of developing a regulation to account for a threatened species by the one-year deadline: a finding of "warranted but precluded" under 16 U.S.C. § 1533(b)(3)(B)(iii). The Ninth Circuit has explained that provision as follows:

> A "warranted but precluded" finding has two components. First, it is an admission by the Secretary that a species qualifies for protection—and that protection is "warranted"—under the ESA . . . . Second, the finding also states that a final rule cannot be issued right away, for administrative reasons, thereby temporarily excusing the Secretary from issuing a final rule. The circumstances under which the Secretary may invoke that excuse, however, are narrowly defined; Congress emphasized that providing for the "warranted but precluded" designation was not designed to justify "the foot-dragging efforts of a delinquent agency." H. Conf. Rep. No. 97–835, at 22 (1982), *reprinted in* 1982 U.S.C.C.A.N. 2860, 2863. Specifically, the Secretary must show that she is "actively working on other listings and delistings and must determine and publish a finding that such other work has resulted in pending proposals which *actually* preclude[d] [her] proposing the petitioned action at that time." *Id.* (emphasis added). For that reason, "the Secretary must determine and present evidence that [s]he is, in fact, making expeditious progress in the process of listing and delisting other species." *Id.*; *see also* 16 U.S.C. § 1533(b)(3)(B)(iii) (requiring the Secretary to show that "expeditious progress is being made to add qualified species to either [the endangered or threatened species lists] and to remove from such lists species for which the protections of [the ESA] are no longer necessary").

*Norton*, 254 F.3d at 838. "If the Secretary finds that action is 'warranted but precluded,' the cycle repeats: Within 12 months of that determination, she must again decide whether or not action is warranted or 'warranted but precluded' and publish appropriate supporting findings." *Id.* at 840 (citing 16 U.S.C. § 1533(b)(3)(C)(i)).

Plaintiffs are likely correct that a warranted-but-precluded finding may be the most appropriate mechanism available under the statutory scheme to account for Defendants' practical constraints, *if* Defendants conclude that "threatened" designation is warranted. It is also possible, of course, that Defendants might find that listing the white sturgeon as threatened is not warranted by the available evidence. Defendants' longest timelines reflect the work they assert is needed for

15

a "warranted" finding, but the statute does not require them to make such a finding. *See* ECF No. 26 (Defs.' Mot.) at 15 ("A 'warranted' finding requires more time . . . ."); *id.* at 16 (asserting a need for "[a]nywhere from one month to one year to draft the Federal Register document, depending on whether the 12-month finding is 'not warranted,' 'warranted but precluded,' or 'warranted'").[12]

At the hearing, defense counsel argued that a warranted-but-precluded finding still requires much of the same analysis as any other finding. That may be so, but the inclusion of this option in the statute reflects Congress's recognition that practical constraints may limit the Secretary's ability to complete the full scope of a "warranted' finding within the mandatory one-year deadline. Rather than grant the Secretary (or the courts) discretion to delay any decision beyond that deadline, Congress chose to allow for a somewhat less complete decision that is subject to further review on a periodic basis, without modifying the deadline by which *some* decision must be reached. The availability of this fallback option for an overworked agency reinforces the Court's conclusion that the ESA's deadlines are mandatory, even if they require compromises in the nature of Defendants' review process.

### E.     A Ninth-Month Deadline Comports with Congress's Intended Timeline

As discussed above, neither Defendants' self-imposed procedures nor Congress's budgetary constraints constitute valid reasons to allow for more time than the ESA mandates for a decision. That frame of analysis, however, leaves little relevant evidence on which to determine the time period that would be feasible for FWS to complete its review now that it has missed the deadline. In the absence of such evidence, the Court falls back on the statute.

Congress provided for one year to reach the decision at issue here, and for at least a default deadline of ninety days to complete the threshold decision of "substantial scientific or commercial information indicating that the petitioned actions may be warranted" that Defendants have already completed (albeit in October, ten months after the petition was filed). With no evidence from

---

[12] Defendants might also, of course, elect to proceed with a "warranted" finding, but if so, they must do so on a schedule consistent with this Order.

which to assess the degree of work that Defendants have done on the petition since then,[13] the statutory schedule contemplates that the remaining work after the ninety-day decision should take no more than nine months. The Court will therefore allow nine months from the date of this Order for Defendants to make a "twelve-month" finding on the petition, which is a presumptively feasible task given the schedule Congress has set in the ESA.

If Defendants cannot meet that deadline following their usual procedures for review, the Court expects them to depart from procedures that are not set by statute to the extent that is necessary to meet this deadline, which derives from the ESA's mandatory statutory deadline that Defendants have already missed. That this nine-month deadline ultimately falls more than a year after the statute required Defendants to act is regrettable, and if Plaintiffs had offered specific evidence that it is feasible to conduct the work required for a decision faster, the Court would have considered setting an earlier compliance deadline. But Plaintiffs have not offered such evidence, and the time that has already been lost cannot be reclaimed by judicial fiat. Requiring Defendants to pick up where they left off on the original statutory schedule best effectuates the intent of the ESA under the circumstances of the case.

Defendants ask that any deadline should apply to submission of their decision to the Federal Register rather than publication in the Federal Register, because the Defendants in this case do not control the publication schedule. Plaintiffs represented at the hearing that they do not oppose that request. Accordingly, Defendants are ORDERED to submit their "twelve-month" finding to the Federal Register no later than nine months from the date of this Order.

The Court briefly addresses Defendants' arguments that this deadline will require them to set aside other petitions for species that might more urgently require protection. Such petitions are not before the Court in this case, and this Court therefore cannot and does not order Defendants to take any particular action on any petition beyond the SFE white sturgeon petition at issue here. The Court's intent, however, is not to give special treatment to the white sturgeon that would not

---

[13] At the hearing, defense counsel represented that Defendants have conducted some substantive analysis to determine which "bin" to assign the petition. But the Court has no basis to determine how such work would translate towards the twelve-month decision at issue.

17

apply to any other species. The ESA's deadlines are equally mandatory as to all such petitions, and Defendants' procedure for review appears to be no more consistent with the ESA's deadlines (and corresponding congressional appropriations) when applied to other petitions than it is here, unless and until Congress either amends the ESA or appropriates additional funds. The Court's order is that Defendants must comply with the deadline set here to evaluate the specific petition at issue. The Court's hope is that Defendants will comply with their obligations under the ESA in addressing other deserving petitions as well.

## IV.   CONCLUSION

For the reasons discussed above, Defendants are ORDERED and ENJOINED to make a finding under 16 U.S.C. § 1533(b)(3)(B) on Plaintiffs' petition to list the San Francisco Estuary population of white sturgeon as threatened under the ESA, and to submit that finding no later than June 3, 2026 (nine months from the date of this Order) for publication in the Federal Register. The Clerk shall enter judgment accordingly and close the case. The Court retains jurisdiction to enforce this Order.

**IT IS SO ORDERED.**

Dated: September 3, 2025

LISA J. CISNEROS
United States Magistrate Judge